# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ANTHONY VERDI, Individually, and on Behalf of All Others Similarly Situated, | CIVIL ACTION NO. 09-CIV-7752 |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |
| vs. | **JURY TRIAL DEMANDED** |
| MANULIFE FINANCIAL CORPORATION, DOMINIC D'ALLESSANDRO, AND PETER RUBENOVITCH, | **CORRECTED COPY** |
| Defendants. | |

Plaintiff, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Manulife Financial Corporation ("Manulife" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of securities analysts' reports concerning Manulife; (c) review and analysis of press releases and media reports issued by and disseminated by Manulife; and (d) review of other publicly available information concerning Manulife.

1. This is a class action against Manulife and certain of its officers and directors for violation of the federal securities laws. Plaintiff brings this action on behalf of himself and all other persons or entities, except for Defendants and certain of their related parties as described below, who purchased Manulife securities (the "Class") during the period March 28, 2008 through June 22, 2009, inclusive (the "Class Period"), with respect to the claims asserted

pursuant to the Securities and Exchange Act of 1934, (the "Exchange Act).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

3. This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)). Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) and (c). Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District.

4. In connection with the acts and omissions alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

5. Plaintiff purchased Manulife securities during the Class Period, as set forth in the certification attached hereto.

6. Defendant Manulife is a leading Canadian-based financial services group serving millions of customers in 19 countries and territories worldwide whose principal offices are located at 200 Bloor Street East, North Tower 10, Toronto, ON M4W 1E5. Operating as Manulife Financial in Canada and Asia, and primarily as John Hancock in the United States, the Company operates as a life insurance company. It provides various financial protection and wealth management products and services, including individual life insurance, group life and health insurance, long-term care insurance, pension products, annuities, and mutual funds to individual and group customers in Canada, the United States, and Asia.

7. Defendant Dominic D'Alessandro ("D'Alessandro") served as President and Chief Executive Officer ("CEO") of Manulife throughout the Class Period before retiring on May 7, 2009.

8. Defendant Peter Rubenovitch ("Rubenovitch") served as the Senior Executive Vice President and Chief Financial Officer ("CFO") of the Company until the announcement of his departure on June 22, 2009.

9. Defendants D'Alessandro and Rubenovitch are herein collectively referred to as the "Individual Defendants".

10. The Individual Defendants, who were the Company's principal officers, controlled Manulife and its public disclosures. The Individual Defendants them made false and misleading statements and/or failed to disclose material adverse information concerning the true risk to the Company of its segregated fund contracts ("Segregated Fund Contracts").

11. Segregated Fund Contracts are insurance contracts also known as individual variable annuities that offer death benefits and maturity guarantees. Segregated Fund Contracts offer the growth potential of mutual funds, plus valuable wealth protection features.

12. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets, and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and/or Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

13. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications, as alleged herein, were the collective actions of the narrowly defined group of Defendants identified above. Each of the above officers and/or directors of Manulife, by virtue of their high level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware or deliberately disregarded that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements in violation of the federal securities laws.

14. As officers and/or directors and controlling persons of a publicly held company whose securities were, and are registered with the SEC pursuant to the Exchange Act, traded on the New York Stock Exchange, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased Manulife securities during the Class Period. Excluded from the Class are Defendants, officers and directors of the Company, members of the immediate families of the Individual Defendants and each of their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest.

17.     This action is properly maintainable as a class action because:

a.      the members of the proposed Class in this action are dispersed throughout the United States and are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that Class members number in the thousands. Millions of Manulife shares were traded publicly on the New York Stock Exchange under the symbol "MFC." As of May 15, 2009, when the Company filed its most recent quarterly report with the SEC, there were 1.61 billion Manulife ordinary shares

outstanding.

    b.  Plaintiff's claims are typical of those of all members of the Class because all have been similarly affected by Defendants' actionable conduct in violation of federal securities laws as alleged herein;

    c.  Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent;

    d.  A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein because joinder of all members is impracticable. Furthermore, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to redress the wrongs done to them. The likelihood of individual Class members prosecuting separate claims is remote;

    e.  Plaintiff anticipates no unusual difficulties in the management of this action as a class action; and

    f.  the questions of law and fact common to the members of the Class with respect to the Exchange Act claims predominate over any questions affecting individual members of the Class.

Among the questions of law and fact common to the Class are:

    i.  whether Defendants' acts and/or omissions as alleged herein violated the federal securities laws;

    ii.  whether the Company's Class Period public statements and filings misrepresented and/or omitted material facts;

    iii.  as, whether Defendants acted with knowledge or with reckless disregard for the truth in misrepresenting and/or omitting material facts;

    iv.  as to the Claims pursuant to the Exchange Act, whether Defendants participated in and pursued the common course of conduct complained of herein;

    v.  whether the market price of Manulife securities was inflated artificially as a result of Defendants' material misrepresentations and/or omissions during the Class Period; and

    vi.  to what extent the members of the Class have sustained damages and the proper measure of damages.

## SUBSTANTIAL ALLEGATIONS

18. The Class Period begins on March 28, 2008 with the dissemination by the Company of its Annual Report and Management's Discussion and Analysis annexed to its F-40 filing with the SEC. With respect to its risk management strategies concerning its Segregated Fund Contracts the disclosure stated in relevant part:

> **Risk Management Strategy** We manage assets supporting products that generally pass through investment returns to policyholders, to achieve a target return designed to maximize dividends or credited rates, subject to established risk tolerances. To support wealth management products with fixed credited rates, we invest in fixed income assets that have a term profile generally matching the term profile of the liabilities to the extent assets are available in the market at those terms. Several insurance and wealth management products have guaranteed benefits extending well beyond the term for which fixed income assets are generally available in the market. We manage assets supporting these long-dated benefits to achieve a target return sufficient to support these obligations over their lifetime, subject to established risk tolerances by investing a portion in a diversified basket of non-fixed income assets, with the balance invested in fixed income portfolios.
>
> We evaluate market price and interest rate risk exposures using a variety of techniques and measures that are primarily based on projecting asset and liability cash flows under a variety of future interest rate and market return scenarios.

These measures include durations, key-rate durations, convexity, cash flow gaps, shareholders' economic value sensitivity to specific stress scenarios, earnings at risk and economic capital.

Interest rate and credit spread risk arising in our general account, is managed against enterprise-wide economic capital and earnings at risk based limits and economic value sensitivity limits for specific segments. We delegate trading authorities to individuals as well as accountabilities for managing and monitoring interest rate risk. Asset duration, key-rate duration and cash flow targets are reviewed, modified and communicated to portfolio managers with a frequency ranging from daily to annually, depending on the type of liabilities and the frequency and size of potential changes in the liability profiles. We monitor actual asset positions against targets and rebalance positions to within established interest rate risk exposure limits with a frequency ranging from daily to quarterly, depending on the potential exposure to changes in the profile of assets and liabilities.

We mitigate market price risk arising from our general account non-fixed income investments by investing in a diversified basket of assets consisting of public and private equities, commercial real estate, timberland, agricultural land and oil and gas properties. We manage total non-fixed income asset investments against an established aggregate limit and against aggregate limits for each asset category. To diversify risk, we manage our public and private equity investments against established targets and limits by industry type and corporate connection, commercial real estate investments to established limits by property type and geography, and timber and agricultural land investments to limits by geography and crop. We proactively manage allocations to non-fixed income assets, reflecting management's risk preferences.

We mitigate both market price and interest rate risk arising from off-balance sheet products through benefit guarantee design, limitations on fund offerings, use of reinsurance and capital markets hedging. We design new product benefit guarantees and fund offerings to meet established extreme event risk exposure limits, based on economic capital. We have reinsurance in place on existing business that transfers investment return related benefit guarantee risk, where appropriate. We also employ dynamic capital markets hedging for a portion of our business.

19.  The afore-referenced Risk Management Strategy with respect to Segregated Fund Contracts was materially false and misleading since the non-fixed "diversified" basket of assets was *not diversified* with respect to the risk of material decline its value, and the Company had applied no material hedging strategy with respect to that risk. Indeed, at the very time the

Strategy was disseminated to the investing public, the United States economic system was suffering huge negative shocks in the failure of Bear Stearns and Company, Inc. and the equity markets were highly volatile and risky. Yet the Manulife Risk Strategy failed to convey the true nature of the risk. Rather it misled purchasers of Manulife shares to believe that the Risk was controlled when it was not.

20. On February 12, 2009, Manulife issued a press release filed as a 6-K with the SEC announcing its financial results for the fourth quarter and fiscal year 2008. The Company revealed that its reserves for Segregated Fund Contracts had to be increased from $526 million as of December 31, 2007 to an astonishing $5.7 billion for the period ending December 31, 2008. This revelation constituted a partial but not a full disclosure of the wrongdoing. The press release stated, among other things:

> Manulife Financial Corporation ("Manulife") today reported shareholders' net income of $517 million for the year ended December 31, 2008, compared to net income of $4,302 million in 2007. Fully diluted earnings per share were $0.32 compared to $2.78 in 2007. The Manufacturers Life Insurance Company ("MLI") reported an MCCSR ratio of 233 per cent as at December 31, 2008, up from 221 per cent last year.
>
> "As previously disclosed, our results have been negatively impacted by the downturn in global equity markets, particularly in the fourth quarter", said Dominic D'Alessandro, President and Chief Executive Officer, "We have reacted quickly by strengthening our capital base and ensuring that our product strategies remain appropriate for the long term. Despite these very challenging conditions, our core businesses continue to maintain or increase market share and generated record levels of life insurance sales and new business embedded value in 2008."
>
> As a result of the sharp declines in equity markets, balance sheet reserves for segregated fund guarantees were increased to $5,783 million as at December 31, 2008 compared with $526 million at the prior year end. The Company's obligations under its segregated fund guarantees are substantially payable over a thirty year period beginning in seven years. Over the long term, should equity markets recover, portions of these reserves may reverse into net income.
>
> he loss in the fourth quarter of 2008 amounted to $1,870 million or $1.24 per

9

share on a fully diluted basis and differed by $370 million from the estimate of $1,500 million announced on December 2, 2008. A sharp drop in swap interest rates which are used to value segregated fund guarantee liabilities was the major reason for the higher reported loss. The fourth quarter results include a number of non cash items totaling $2,727 million after tax, including $2,407 million for segregated fund guarantees, other equity related losses of $513 million, accruals for credit impairments and downgrades of $128 million, partially offset by changes in actuarial methods and assumptions.

"Unfavourable movements in interest rates late in the quarter exacerbated the impact of unprecedented declines in equity markets," noted Peter Rubenovitch, Senior Executive Vice President and Chief Financial Officer. "Even after this quarter's very sharp drops in equity markets and interest rates, our balance sheet remains strong and our capital levels are amongst the highest we have ever enjoyed."

During the quarter, the Company successfully raised $4,275 million of new capital, consisting of $2,275 million of common shares and $2,000 million of term loans. The common share issue included $1,125 million sold by way of private placement to eight existing institutional investors and $1,150 million, including a fully subscribed over-allotment of $150 million, sold to a syndicate of underwriters in a "bought deal" public offering. The five year term loan was provided by leading Canadian banks, is repayable at the Company's option at any time, without penalty, and is priced on a floating rate basis at one month BAs plus 380 bps.

21. As a result of the disclosure of this adverse news, the Company's stock declined from $15.25 per share on February 11, 2009, to $9.87 on February 23, 2009.

22. On March 23, 2009, the Company disseminated its Management's Disclosure and Analysis with its 40-F filing, essentially repeating its Risk Management Disclosure disseminated in March 2008.

23. At the end of March, 2009, Manulife had liabilities to its Segregated Fund Contract customers totaling $103.7 billion to pay death benefits, interest or reimbursement at the terminal of the contract, but had only $74 billion in its portfolio backing the business. While the Company added more than $13 billion to close the gap, Manulife will be likely compelled take future additional accruals to close the gap, reducing earnings per share. Sellers of such annuities

receive investments from annuity buyers, invest in stocks, and rely on the assumption that the future value of the stock portfolio will exceed the future annuity liabilities. Annuity sellers similarly situated to Manulife regularly engaged in hedging transactions to manage and mitigate the risk that the future value of the stock portfolio would not be adequate to meet annuity obligations. Manulife did not engage in such hedging relationships.

24. On June 19, 2009, Canada's primary stock market regulator, the Ontario Securities Commission (the "OSC"), announced it had reached a preliminary conclusion that Manulife had failed to properly disclose the risks associated with its variable annuity guarantee and segregated funds business before March 2009.

25. Investors responded to this news when trading markets reopened on June 22, 2009, plummeting the Company's shares down 12%, to close at $17.67, down almost $3 a share, from $20.57, on an unusually high trading volume of almost eight million shares.

26. It was thereafter reported that the Company failed to hedge the risks of an equity downturn. The Separate Fund Contracts, which are at the heart of the Company's problems, are similar to personal pension or retirement plans, where Manulife invests a customer's money and promises future payments. Notwithstanding its Risk Management Strategy Manulife built up a massive stock portfolio, which it chose to leave unhedged. This resulted in a huge decline in the funds available to guaranty the Separate Fund Contract obligations, forcing the Company to raise billions in capital to make up for a widening shortfall in the amount it had promised to pay customers decades from now.

## ADDITIONAL SCIENTER ALLEGATIONS

27. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were

11

materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Manulife, their control over, and/or receipt and/or modification of Manulife's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Manulife, participated in the fraudulent scheme alleged herein.

### Applicability of Presumption Of Reliance: Fraud on The Market Doctrine

28.     The market for Manulife's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Manulife's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Manulife securities relying upon the integrity of the market price of Manulife's securities and market information relating to Manulife, and have been damaged thereby.

29.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Manulife's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

30.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Manulife's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Manulife and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

31. At all relevant times, the market for Manulife's securities was an efficient market for the following reasons, among others:

a. Manulife's securities met the requirements for listing, and were listed and actively traded on the Manulife a highly efficient and automated market;

b. As a regulated issuer, Manulife filed periodic public reports with the SEC;

c. Manulife regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d. Manulife was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

32. As a result of the foregoing, the market for Manulife's securities promptly digested current information regarding Manulife from all publicly available sources and reflected such information in Manulife's stock price. Under these circumstances, all purchasers of Manulife's securities during the Class Period suffered similar injury through their purchase of Manulife's securities at artificially inflated prices and a presumption of reliance applies.

### COUNT I
(For Violations of Sections 10(b) of the Exchange Act And SEC Rule 10b-5
Against Manulife, D' Alessandro and Rubenovitch)

33. Plaintiff repeats and realleges paragraphs 1 through 33, as if set forth fully herein.

34. In connection with the sale of Manulife securities throughout the Class Period, Defendants participated, directly or by acquiescence, despite a duty to act, in the preparation and/or issuance of materially false and misleading statements and omissions.

35. Defendants knew, or were reckless in not knowing, that the statements contained in Manulife public filings were materially false and misleading. Plaintiff and the Class relied, directly or indirectly by reliance on the integrity of the market, on Defendants' misstatements and/or omissions and were damaged as a result. But for Defendants' misrepresentations and/or omissions, Plaintiff and the Class would not have purchased Manulife securities or would have purchased them at non-artificially inflated prices.

### COUNT II
(For Violation of Section 20(a) of the Exchange Act Against D'Alessandro and Rubenovitch)

36. Plaintiff repeats and realleges each of the preceding paragraphs 1 through 36 as if fully set forth herein.

37. The Individual Defendants were control persons within the meaning of the Exchange Act.

38.     As set forth above, Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5, by their acts and omissions as alleged in this complaint. By virtue of their positions as control persons, the Individual Defendants, each of whom violated Section 10(b) and Rule 10b-5, are liable pursuant to Section 20(a) of the Exchange Act.

39.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made, there was no statement made with respect to any of those representations forming the basis of this Complaint that actual results "could differ materially from those projected," and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Manulife who knew that the statement was false when made.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all other Class members, prays for judgment as follows:

    A.    A determination that this action is a proper class action and a certification of the Class under Rule 23 of the Federal Rules of Civil Procedure;

    B.    An award of compensatory damages in favor of Plaintiff and the other Class members against all Defendants for damages sustained as a result of Defendants' wrongdoing, including interest thereon;

    C.    An award to Plaintiff and the Class of their reasonable costs and expenses incurred in this action, including counsel fees, expert fees and other disbursements; and

    D.    A grant of such other relief as the Court may deem just and proper.

Dated: September 9, 2009

                        **LAW OFFICES OF DANIEL E. CLEMENT**

                        By: _/s/ Daniel E. Clement_
                        Daniel E. Clement, Esq. (A Member of the
                        Bar of this Court)
                        420 Lexington Avenue, Suite 2320
                        New York, New York 10170
                        Tel.: (212) 683-9551
                        Fax: (212) 202-3960

                        DClement@clementlaw.com

                        *Attorneys for Plaintiff*

### PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint of Manulife Financial Corp. ("Manulife") and certain other defendants.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5. Plaintiff made the following transactions during the Class Period (March 28, 2009 through June 19, 2009) in the common shares of Manulife:

| **Purchases** | | | **Sales** | | |
| --- | --- | --- | --- | --- | --- |
| Date(s) | Number of Shares | Price | Date(s) | Number of Shares | Price |
| 3/15/08 | 600 | 35.60 | 5/7/09 | 450 | 17.56 |
| 8/22/08 | 247 | 34.50 | 5/20/09 | 150 | 19.50 |
| 10/28/08 | 600 | 17.58 | 6/10/09 | 60 | 22.50 |
| 3/3/2009 | 59 | 7.849 | | | |

6. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7. I declare under penalty of perjury, this 22 day of July, 2009 that the information above is accurate.

*[signature: E-Signed]*

## DECLARATION OF SERVICE

I, Meredith F. McBride, hereby certify that a true and correct copy of Class Action Complaint for Violation of Federal Securities Laws (corrected copy) was served on September 8, 2009, via United States First Class Mail, postage prepaid and addressed as follows:

> Manulife Financial Corporation
> 200 Bloor Street East
> North Tower 10
> Toronto, ON M4W 1E5
>
> Dominic D'Allessandro
> Manulife Financial Corporation
> 200 Bloor Street East
> North Tower 10
> Toronto, ON M4W 1E5
>
> Peter Rubenovitch
> Manulife Financial Corporation
> 200 Bloor Street East
> North Tower 10
> Toronto, ON M4W 1E5

Meredith F. McBride